UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>      v.<br><br>ALL PETROLEUM-PRODUCT CARGO ABOARD THE SUEZ RAJAN WITH INTERNATIONAL MARITIME NUMBER 9524475,<br><br>      Defendant *in Rem*. | Civ. A. No. 23-882 (CJN) |

**MEMORANDUM OF LAW IN SUPPORT OF UNITED STATES'
MOTION FOR ENTRY OF DEFAULT JUDGMENT AND ORDER OF FORFEITURE**

This *in rem* forfeiture action arises out of an investigation of the transportation and sale of Iranian oil product for the benefit of the Islamic Revolutionary Guard Corps ("IRGC") and the IRGC Quds Force ("IRGC-QF"). This action seeks to forfeit the Defendant Property, which originated from oil terminals in Iran. Vessels transporting the Defendant Property utilized surreptitious means to hide the Defendant Property's Iranian origin and to transfer the Defendant Property onto other vessels moving the cargo into commerce by, and for the benefit of, the National Iranian Oil Company ("NIOC"), National Iranian Tanker Company ("NITC"), IRGC and the IRGC-QF, each of which has been designated by the U.S. Treasury Office of Foreign Assets Control ("OFAC"), which is located in the District of Columbia.

The Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(G)(i), as "foreign or domestic assets" of the IRGC and IRGC-QF, designated foreign terrorist organizations, which have "engaged in planning and perpetrating" federal crimes of terrorism as defined by 18 U.S.C. § 2332b(g)(5) "against the United States, citizens or residents of the United States, or their

property, and [as] assets, foreign or domestic, affording any person a source of influence over . . . such entity or organization." The Defendant Property is also subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it is property that was involved in, and/or traceable to, money laundering offenses in violation of 18 U.S.C. § 1956(a)(2)(A).

Since the filing of its Verified Complaint for Forfeiture *In Rem* ("Verified Complaint"), the United States has complied with the notice requirements contained in the Rule G(4) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"). *See* Supp. R. G(4)(a), (b). Because no party has submitted a claim in accordance with the Supplemental Rules, entry of default judgment is appropriate, and the United States now requests an order of forfeiture of the Defendant Property.

## FACTUAL BACKGROUND

This *in rem* forfeiture action arises out of an investigation by the United States Department Homeland Security ("HSI") and the Federal Bureau of Investigation ("FBI") of a scheme to launder funds through the United States to illicitly facilitate the transport of Iranian petroleum products, for the benefit of Iran, for the purpose of evading U.S. sanctions. D.E. 1, ¶ 1.

From in or around January 2022 to in or around February 2022, Empire Navigation, Suez Rajan Limited, and others knowingly and willfully conspired to violate U.S. export controls and sanctions by using the U.S. financial system to facilitate the transport of Iranian petroleum products aboard the M/T Suez Rajan, for the benefit of Iran, in violation of International Emergency Economic Powers Act (IEEPA). D.E. 1; *see also United States v. Empire Navigation et. al.*, 23-cr-88, D.D.C, D.E. 1, (Mar 17, 2023).

## PROCEDURAL HISTORY

On March 31, 2023, the United States of America commenced this sealed civil forfeiture action *in rem* against the Defendant Property by filing its Verified Complaint. *See* D.E. 1. On April

10, 2023, the Court made a probable cause finding and issued a warrant for arrest *in rem*. D.E. 5. On April 19, 2023, this Court granted the interlocutory sale of the Defendant Property. D.E. 7. On September 8, 2023, this action was unsealed. D.E. 8. On November 28, 2023, the United States filed an accounting of the interlocutory sale indicating the net proceeds of the sale of the Defendant Property totaled $74,681,143.33, before interest. D.E. 10.

Supplemental Rule G(4)(b) requires the United States "to send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government." Supp. R. G(4)(b). The United States identified all known potential claimants to the Defendant Property. *See* D.E. 12-1, ¶¶ 7-8. Between September 14, 2023, and September 15, 2023, the United States sent direct notice of this action and a copy of the Verified Complaint to a known potential claimant at fifteen (15) different email addresses and two (2) different physical addresses. *Id.* No party filed a claim or interest to the Defendant Property. *Id.* at ¶ 9.

On September 12, 2023, the United States also began posting notice of this forfeiture action on an internet site, http://www.forfeiture.gov, for 30 consecutive days. *Id.* at 10. Any verified claim in response to notice by internet publication had to be filed no later than October 12, 2023. *See* Supp. R. G(5)(a)(ii)(B). No one filed a claim in response to notice by publication. D.E. 12-1, ¶ 10.

On December 6, 2023, the Clerk of the Court entered default against all persons or entities otherwise claiming an interest in the Defendant Property for failure to timely claim, answer, or otherwise defend the action after receiving notice pursuant to the Supplemental Rules. D.E. 13. This case is now ripe for default judgment and issuance of a final order of forfeiture.

**STANDARD FOR ENTRY OF DEFAULT JUDGMENT**

"A court may enter default judgment when the 'party against whom a judgment . . . is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise.'" *United*

*States v. 8,911 Type 56-1 Assault Rifles*, Civ. A No. 12-1951 (JEB), at * 11 at p. 3 (Dec. 1, 2023) (citing Fed. R. Civ. P. 55(a)). Default relief is appropriate even when the defendant is property and "unless a claimant properly intervenes to raise defenses to its forfeiture, the defendant property is deemed to have 'failed to plead or otherwise defend' against the allegations, and the Clerk of Court must enter default." *United States v. All Assets Held in Account Number XXXXXXXX*, 330 F. Supp. 3d 150, 156 (D.D.C. 2018) (quoting Fed. R. Civ. P. 55(a)).

Upon entry of default, the defendant is "deemed to admit every well-pleaded allegation in the complaint." *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001); *see also Hartford Fire Ins. Co. v. Vista Cont., Inc.*, Civ. A No. 16-0285 (JDB), 2016 U.S. Dist. LEXIS 161497, at *5 (D.D.C. Nov. 22, 2016) ("Once default is entered by the clerk, the court assumes that all allegations in the well-pleaded complaint are true for the purpose of determining whether to enter default judgment.") (citation omitted); *see also United States v. 171 "Dehlavieh" Anti-Tank Guided Missiles*, Civ. A. No. 20-2299 (JEB), 2021 WL 5310567, at *2 (D.D.C. Nov. 15, 2021).

"The determination of whether a default judgment is appropriate is 'committed to the sound secretion of the trial court.'" *Anti-Tank Guided Missiles,* 2021 WL 5310567, at *2 (quoting *Lu v. Lezell*, Civ. A. No. 11-1815, 2013 WL 12183952, at *1 (D.D.C. July 19, 2013)). The court has the power to enter default judgment "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules." Fed. R. Civ. P. 55(a); *Int'l Painters & Allied Trades Indus. Pension Fund v. Zak Architectural Metal & Glass, LLC*, 635 F. Supp. 2d 21, 23 (D.D.C. 2009).

This authority applies equally in the context of a civil forfeiture action. *See, e.g.*, *United States v. $23,000 in U.S. Currency*, 356 F.3d 157, 163 (1st Cir. 2004) (applying Federal Rule of Civil Procedure ("Rule") 55 equally in the civil forfeiture context); *United States v. $6,500.00 in U.S. Currency*, Civ. A. No. 10-0327, 2010 WL 4365886, at *1 (E.D. Tex. Nov. 2, 2010), *R. & R.*

*adopted*, 2010 WL 4365890, at *1 (E.D. Tex. Nov. 3, 2010). Default judgment is available "when the adversary process has been halted because of an essentially unresponsive party . . . [as] the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights." *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)).

Although there is a general policy favoring decisions on the merits, if potential claimants fail to respond to a complaint, "a decision on the merits is impractical, if not impossible." *United States v. Approximately $45,860 in U.S. Currency*, Civ. A. No. 14-3801, 2015 WL 1387468, at *4 (N.D. Cal. Mar. 24, 2015); *see also Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980). "A denial of default judgment would prejudice the government in that it would be required to expend further time and effort in an action where no claimants [] have appeared. Without a default judgment, the government may be without recourse altogether." *United States v. Real Prop. & Improvements Located at 929 Clay St.*, Civ. A. No. 15-0010, 2015 WL 3547256, at *3 (N.D. Cal. June 5, 2015).

The court's initial inquiry when considering default is whether notice has been adequately served and if any party filed a timely claim. *See United States v. $4,620 in U.S. Currency*, 779 F. Supp. 2d 65, 67 (D.D.C. 2011) (default was appropriate because the government "provided sufficient notice of the seizure of the defendant property," and no party filed a timely claim); *see also United States v. Remington, Model 58, 12 Gauge Shotgun*, Civ. A. No. 11-0330, 2012 WL 1466684, at *1 (E.D. Tex. Feb. 7, 2012), *R. & R. adopted*, 2012 WL 1466682 (E.D. Tex. Apr. 26, 2012) (default judgment entered upon showing government's compliance with Supplemental Rule G(4)); *United States v. 1999 Lexus GS400*, Civ. A. No. 05-1139, 2007 WL 1056791, *2-3 (N.D. Cal. Apr. 6, 2007) ("Default may be entered upon a showing that: (a) notice has been given as required by Admiralty Local Rule 6–1; (b) the time to answer has expired; and (c) no one has appeared to claim the property.").

Assuming proper notice, the court's second inquiry before entering default judgment is whether the complaint establishes a reasonable belief of forfeitability. *See United States v. $1,071,251.44 of Funds Associated with Mingzheng Int'l Trading Ltd.*, Civ. A. No. 17-01166, 2018 WL 3949962, at *4 (D.D.C. June 29, 2018) (citing *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 571 F. Supp. 2d 1, 16 (D.D.C. 2008), *R. & R. adopted*, Civ. A. No. 17-1166, 2018 WL 3941949 (D.D.C. Aug. 15, 2018). "Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint." *Boland v. Smith & Rogers Constr. Ltd.*, 201 F. Supp. 3d 144, 147 (D.D.C. 2016); *see also Int'l Painters & Allied Trades Indus. Pension Fund v. Dettrey's Allstate Painting, LLC*, 763 F. Supp. 2d 32, 34 (D.D.C. 2011) (same) (citing *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (same)). A court must treat "the factual allegations in a complaint, other than those as to damages . . . as conceded by the defendant." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005); *see also Int'l Painters & Allied Trades Indus. Pension Fund v. R. W. Amrine Drywall Co., Inc.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002) (the "defaulting defendant is deemed to admit every well-pleaded allegation in the complaint" upon entry of default by the clerk) (citation omitted).

## ENTRY OF DEFAULT JUDGMENT IS APPROPRIATE

On December 6, 2023, the Clerk of the Court entered Default in this matter. *See* D.E. 13. Upon entry of default by the Clerk of the Court, the "defaulting defendant is deemed to admit every well-pleaded allegation in the complaint." *Int'l Painters*, 239 F. Supp. 2d at 30 (citation omitted). As a result, outside the terms of the Settlement Agreement, the entry of a default judgment against the Defendant Properties is supported under the circumstances of this case. *See United States v. 8 Gilcrease Lane*, 638 F.3d 297, 299 (D.C. Cir. 2011) (upholding district court's order for default judgment and final order of forfeiture based on the ground that no claimants contesting forfeiture remained in the case). Indeed, the Clerk of the Court "must enter" default

6

when there has been a failure to plead timely or otherwise defend an action within the time fixed by law. Fed. R. Civ. P. 55(a). Moreover, the Civil Asset Forfeiture Reform Act of 2000, codified at 18 U.S.C. § 983(a)(4)(A), mandates the filing of a claim within thirty days of the service of the United States' Verified Complaint. *Id.*

### I. THE UNITED STATES MET THE APPLICABLE NOTICE REQUIREMENTS

The Supplemental Rules govern civil forfeiture actions *in rem* arising from a federal statute. *See* Supp. R. A(1)(B). The Federal Rules of Civil Procedure also apply except to the extent they are inconsistent with the Supplemental Rules. *See* Supp. R. A(2). Supplemental Rule G(4) governs the process by which the United States must serve notice of the complaint. Notice is required to the public via publication, as well as to potential claimants via direct notice. *See* Supp. R. G(4).

#### A. Publication

On September 12, 2023, the United States began posting notice on the internet site, http://www.forfeiture.gov, for thirty consecutive days ending on October 11, 2023. D.E. 12-1, p 3. Any verified claim in response to the notice by internet publication had to be filed no later than November 7, 2023. *Id.*; *see* Supp. R. G(5)(a)(ii)(B). No claims based on publication notice were filed. *Id.*

#### B. Direct Notice

Supplemental Rule G also requires that the United States send direct notice "to any person who reasonably appears to be a potential claimant on the facts known to the government." Supp. R. G(4)(b)(i). The notice must be sent by means "reasonably calculated to reach the potential claimant." Supp. R. G(4)(b)(i)(A). The United States served direct notice to the only identified claimant via First-Class Mail and email and achieved the correspondingly noted results:

| Date | Potential Claimant/Address | Method of Service |
|---|---|---|
| September 14, 2023 | Ocean Park Limited | Email: info@oceanpark-ltd.com; Undeliverable message |
|  | Ocean Park Limited<br>Flat A1-A7, 2/F<br>Pahsang Industrial Building<br>16 San on Street, Tuen Mun, Hong Kong | United States Postal Service First-Class Mail; Not Returned to Sender |
| September 15, 2023 | Ocean Park Limited | Email: Hameem@oceanpark-ltd.com; Commercial6@oceanpark-ltd.com; Commercial2@oceanpark-ltd.com; Commercial1@oceanpark-ltd.com; Chartering-ops@oceanpark-ltd.com; Chartering1@oceanpark-ltd.com; Chartering1@oceanpark-ltd.com; Ops5@oceanpark-ltd.com; Chartering@oceanpark-ltd.com; Chartering2@oceanpark-ltd.com; Ops1@oceanpark-ltd.com; Ops2@oceanpark-ltd.com; Ops4@oceanpark-ltd.com; oceanpark1366@gmail.com.<br><br>No undeliverable message |
|  | Ocean Park Limited<br>Plot No. 196, Sector 18A<br>Nerul West, Navi Mumbai,<br>400706 Maharashtra, India | United States Postal Service First-Class Mail; Not Returned to Sender |

D.E. 12-1 at p. 2. Direct notice was neither provided to Empire Navigation nor Suez Rajan Limited because in the resolution of their conduct related to the transportation of the Defendant Cargo, both parties, disclaimed any ownership interest in the cargo. *See United States v. Suez Rajan Limited*, 23-cr-00088 (CJN), at * 6, ¶ 11 (Apr. 19, 2023); *United States v. Empire Navigation*, 23-cr-00088 (CJN), at * 4-2, ¶ 3 (Apr. 4, 2023).

Ineffective direct notice is not a bar against forfeiture, as long as notice via publication was effective. *See United States v. Funds Up to & including the Amount of $56,634 in U.S. Currency on Deposit in Banesco Int'l, Panama*, 79 F. Supp. 3d 112, 6114 (D.D.C. 2015) (notice was

8

adequate where government attempted, but was unable, to obtain the account holders' contact information, and thus could only rely on posting public notice of the forfeiture action on the government's forfeiture website); *see also Hammel v. Drug Enf't Admin.*, Civ. A. No. 12-2932, 2013 WL 1363861, at *3 (D.S.C. Apr. 3, 2013) (mailing of notice to two known addresses and subsequent notice by publication in a national newspaper is sufficient notice); *Folks v. Drug Enf't Admin.*, No. 05-0389, 2006 WL 3096687, at *2 (W.D.N.C. Oct. 25, 2006) (finding notice sufficient when notice sent to Plaintiff at only address on record went unclaimed, because government also gave notice by publication).

In this case, the United States fully satisfied the Supplemental Rule G requirements for notice by publication and direct notice.

## II.   THE VERIFIED COMPLAINT FOR FORFEITURE IN REM STATES A CLAIM FOR RELIEF

The well-pleaded facts in the Verified Complaint support a reasonable belief that the Defendant Properties are forfeitable pursuant to 18 U.S.C. § 981(a)(1)(G)(i), as "foreign or domestic assets" of the IRGC and IRGC-QF, designated foreign terrorist organizations, which have "engaged in planning and perpetrating" federal crimes of terrorism as defined by 18 U.S.C. § 2332b(g)(5) "against the United States, citizens or residents of the United States, or their property, and [as] assets, foreign or domestic, affording any person a source of influence over . . . such entity or organization." The well-pleaded facts in the Verified Complaint also support a reasonable belief the Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it is property that was involved in, and/or traceable to, money laundering offenses in violation of 18 U.S.C. § 1956(a)(2)(A). The Verified Complaint describes in detail a scheme to use the United States financial system to facilitate the transportation of Iranian petroleum products from Iran to China with the intention of violating U.S. sanctions. D.E. 1.

The Verified Complaint alleged that, on or about January 14, 2022, the M/T Virgo ("Virgo") entered the Persian Gulf from the Golf Oman and, on January 17, 2022, was found to be loading Iranian petroleum products at Kharg Oil Terminal. *Id.*, at ¶¶ 34-36. Throughout this time, the Virgo had been manipulating its Automatic Identification System ("AIS"). *See id.*, at ¶¶ 34-35. After departing the Kharg Oil Terminal, the Virgo resumed its AIS transmissions and indicated that it was fully laden. *Id.*, at ¶ 37. On or about January 31, 2022, the Virgo entered the South China Sea. *Id.*, at ¶ 38.

The Verified Complaint further alleged that on or around February 3, 2022, Ocean Park Limited entered into a charter agreement with Suez Rajan Limited to charter the M/T Suez Rajan ("Suez Rajan"). *Id.*, at ¶ 39. In support of this agreement, Ocean Park Limited sent Empire Navigation, the technical operator of the Suez Rajan, two wire transfers of US $712,500 on February 11, 2022, and US $516,233.95 on February 16, 2022. *Id.*

The Verified Complaint further alleged that on or about February 2, 2022, the Suez Rajan arrived in Singapore after leaving Dalian, China with no cargo on board. *Id.*, at ¶ 40. On or about February 4, 2022, an Ocean Park Limited representative directed the captain of the Suez Rajan, engage in a ship-to-ship ("STS") transfer with the M/T CS Brilliance (IMO 9153513) ("Brilliance") and another unnamed vessel. *Id.*, at ¶ 41. Pursuant to the instructions from Ocean Park Limited, the Suez Rajan was to load approximately 4,000 barrels from the Brilliance and thereafter load an additional 1,100,000 barrels of oil from an unnamed vessel with the final discharge point being "CHINA FOR ORDER." *Id.*, at ¶ 42.

The government's investigation revealed that an Empire Navigation employee instructed the captain of the Suez Rajan that the two operations with the Brilliance and the Virgo would be fraudulently identified as a single operation and that the fraudulent operation was to be reported on official documentation and logs held onboard the Suez Rajan as a single operation only with

the Brilliance. *Id.*, at ¶ 43. The Empire Navigation employee further instructed the captain of the Suez Rajan to fraudulently report that the vessel loaded approximately 1,000,000 barrels of oil from the Brilliance. *Id.* Despite being challenged by the captain of the Suez Rajan to accurately reflect the number of barrels onboarded from each operation, the Empire Navigation employee states that the fraudulent nature of the operation was an agreement between Ocean Park Limited and Empire Navigation. *Id.*

The Verified Complaint further alleged that on or about February 6, 2020, the Suez Rajan engaged in an STS operation with the Brilliance and took on approximately 4,000 barrels of crude oil. *Id.*, at ¶ 45. After this operation, the captain of the Suez Rajan was directed by the previously referenced Empire Navigation employee to manipulate its draft depth to 16.5 meters on the AIS system to fraudulently reflect that the Suez Rajan was fully laden with approximately 1,000,000 barrels of crude oil. *Id.*, at ¶ 47-48.

The government's investigation revealed that the Suez Rajan logbook contained a February 6, 2023, crossed-out entry that the Suez Rajan loaded 979,935 barrels of crude oil in an STS operation with the Brilliance. *Id.*, at ¶ 49. The Suez Rajan logbook also included another entry on February 6, 2023, which is not crossed out, which indicated that the Suez Rajan loaded 3,931 barrels of crude oil in an STS operation with the Brilliance. *Id.*, ¶ 50

The Verified Complaint alleged that on or about February 13, 2022, the Suez Rajan was observed through satellite imagery, engaging in a separate STS operation with the Virgo and loaded approximately 975,989 barrels of crude oil. *Id.*, at ¶ 53-58.  On or about February 18, 2022, after the STS with the Virgo, the Empire Navigation employee instructed captain of the Suez Rajan to correct the oil record book to accurately reflect the oil loaded by the Brilliance and Virgo. *Id.*, at ¶ 59.

The Verified Complaint further alleged that the individuals and entities conspired to obfuscate the Iranian origin of the cargo on board the Suez Rajan. Finally, the Verified Complaint

11

alleged that at no time did Ocean Park Limited, Suez Rajan Limited, nor Empire Navigation obtain a license from the Office of Foreign Asset Control (OFAC) to engage in U.S. financial transactions and loading of Iranian origin oil onto the Suez Rajan. *Id*., at ¶ 62.

As such, the well-pleaded Verified Complaint indicates that Ocean Park Limited, Suez Rajan Limited, and Empire Navigation engaged in a scheme to use the U.S. financial system to facilitate the transportation or Iranian-origin petroleum cargo without a license in violation of U.S. export controls and sanctions in violation of IEEPA in support of a foreign terrorist organization, the IRGC and IRGC-QF. 18 U.S.C. § 981(a)(1)(G)(i); 1956(a)(2)(A)

## CONCLUSION

Accordingly, upon consideration of the record in this case, including a showing of compliance with applicable rules regarding service of process and notice by publication, and default having been entered by the Clerk of the Court, the United States respectfully requests that this Court order default judgment against all potential claimants and that the Defendant Property be forfeited to the United States of America for disposition according to law. *See 8 Gilcrease Lane*, 638 F.3d at 299 (upholding district court's order for default judgment and final order of forfeiture, because there were no valid claims); *United States v. $9,928.00 in U.S. Currency*, Civ. A. No. 10-1728, 2012 WL 1004873, at *1 (D.D.C. Mar. 27, 2012) (ordering default where government submitted affidavit certifying that it gave appropriate notice and that no claims were filed); *United States v. $4,620 in U.S. Currency*, 779 F. Supp. 2d 65, 67 (D.D.C. 2011) (ordering default where court struck sole claimant's claim, leaving no claimants to the defendant funds).

\* \* \*

Dated: December 18, 2023

        Respectfully submitted,

        MATTHEW M. GRAVES
        United States Attorney
        D.C. Bar No. 481052


By:       */s/ Rajbir Datta*
        RAJBIR DATTA
          N.Y. Bar No. 5206073
        STUART D. ALLEN
        BRIAN P. HUDAK
        Assistant United States Attorneys
        601 D Street, NW
        Washington, DC 20530
        (202) 252-7566 (main line)

*Attorneys for the United States of America*